**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 17-2238 (ABJ-RMM) |
| NEXUS SERVICES, INC., *et al.*, | ) ) |
| Defendants. | ) ) ) |

**MEMORANDUM OPINION AND ORDER**

The Consumer Financial Protection Bureau ("CFPB") moves to enforce the Court's

December 11, 2018 Order against Nexus Services, Inc. and Libre By Nexus, Inc. (collectively,

"Nexus"). *See* Mot. Enforce Ct.'s Dec. 11 Order and Terms of Bureau's Modified CID and

Supp. Mem. P. & A., ("CFPB's Mot."), ECF No. 34. That Order directed Nexus to comply with

a civil investigative demand ("CID") that had been modified through mediation ("Modified

CID"). The CFPB asks the Court to direct Nexus to produce audio recordings of phone calls,

either with the callers' personal information redacted or unredacted, as required in Paragraph

7(b) of the Modified CID. CFPB's Mot. at 8. Nexus opposes the motion, asserting that it

intends to comply with the Court's Order but needs further dialogue with the CFPB regarding

redactions due to the burden and cost of complying with the Modified CID as written, as well as

intervening caselaw. *See* Resps. Nexus Serv., Inc. and Libre By Nexus, Inc.'s Opp'n CFPB's

Mot. Enforce Modified CID ("Nexus's Opp'n"), ECF No. 36. On July 18, 2019, the Honorable

Amy Berman Jackson referred the CFPB's Motion to the undersigned, pursuant to Local Civil

Rule 72.2.  *See* Order, ECF No. 38.  Having considered the parties' briefing,[1] the undersigned **GRANTS** the CFPB's Motion for the reasons set forth below.

## BACKGROUND

On August 21, 2017, the CFPB issued a CID to Nexus.  *See* Pet. Enforce Civil Investigative Demand at ¶ 1, ECF No. 1.  On October 25, 2017, Nexus filed a complaint with this Court seeking to enjoin enforcement of the CID.  *See* Compl., *Nexus Servs., Inc. v. CFPB,* No. 17-cv-2215-ABJ (D.D.C. Oct. 25, 2017), ECF No. 1.  On October 30, 2017, the CFPB separately petitioned this Court to enforce the CID.  Pet. Enforce Civil Investigative Demand, ECF No. 1.  On August 7, 2018, with the parties' consent, the Court referred both cases to mediation.  *See* Order, ECF No. 22; Order, *Nexus Servs., Inc. v. CFPB,* No. 17-cv-2215-ABJ (D.D.C. Oct. 25, 2017), ECF No. 33.  On December 4, 2018, the parties jointly stipulated that the CFPB's petition to enforce should be granted as to a Modified CID, that Nexus would comply with the Modified CID, that Nexus's claims against the CFPB should be dismissed with prejudice, and that the Court should retain jurisdiction to enforce the terms of the Modified CID and adjudicate any disputes related to it.  Stipulation and Proposed Order, ECF No. 28.  On December 11, 2018, the Court entered an Order enforcing the terms of the parties' joint stipulation and the Modified CID.  Order, ECF No. 29.

In particular, Document Request 7 of the Modified CID required Nexus to produce:

> The following documents, after redacting all consumer names and alien numbers:
> a) All e-mails relating to QA Reports, including QA Reports and any other attachments that are not Capsule files and that are not sound recordings;
> b) All sound recordings of phone calls referenced in 1 QA Report per month, for a minimum of 500 calls;
> c) All sound recordings referenced in QA Reports and requested by the

---

[1] CFPB's Mot.; Nexus's Opp'n; Reply Mem. Supp. Bureau's Mot. Enforce the Dec. 11 Order and Terms of Bureau's Modified CID, ("CFPB's Reply"), ECF No. 37.

Bureau, up to a maximum of 250 calls;

    d)  A random sample of sound recordings of 300 phone calls over 4 minutes from 2014;

    e)  A random sample of sound recordings of 300 phone calls over 4 minutes from 2015.

CFPB's Mot. Ex. A-1 (Modified CID), at 4, ECF No. 34-3.

      Nexus timely produced the emails described in Document Request 7(a).  Nexus's Opp'n at 2.  Further, the CFPB has not made any requests under Document Request 7(c).  *Id.*  On March 15, 2019, Nexus explained to the CFPB that compliance with Document Requests 7(d) and 7(e) would be impossible, because its vendor destroyed phone calls from 2014 and 2015 under the vendor's 13 month retention policy.  CFPB's Mot. Ex. E (Mar. 15, 2019 Letter), at 1, ECF No. 34-7.

      On February 19, 2019, Nexus notified the CFPB that compliance with Document Request 7(b) "would require hundreds of hours and tens of thousands of dollars to hire additional support staff."  CFPB's Mot. Ex. B (Feb. 19, 2019 Letter), at 3, ECF No. 34-4.  Nexus explained that the "burden, expense, and time" were not proportionate to the benefit of production, and that "the reality of the cost requirements only recently became apparent throughout the document review and production process."  *Id.*  Nexus did not produce any call recordings by the March 1, 2019 deadline.  CFPB's Mot. at 4; CFPB's Mot. Ex. A (December 4, 2018 Letter), at 3, ECF No. 34-2. On March 21, 2019, Nexus further explained that it was "not refusing to produce redacted phone calls," but rather was "simply advising that [they could not] do so in the time frames set out." CFPB's Mot. Ex. C (Mar. 21, 2019 Letter), at 1, ECF No. 34-5.

      The CFPB moved to enforce the Modified CID, asserting that Nexus should comply with its express terms.  *See* CFPB's Mot.  After the CFPB filed its Motion to Enforce, Nexus produced ninety-six call recordings.  Nexus's Opp'n at 2.  Nexus opposed the Motion to Enforce

and asked the Court to allow further negotiations regarding the response to Document Request

7(b).  Nexus subsequently moved to stay the proceedings, *see* Mot. Stay Proceedings, ECF No.

40, and the Court denied that motion on January 7, 2020.  *See* Order, ECF No. 45.

## DISCUSSION

The CFPB contends that Nexus has failed to comply with the Court's December 11, 2018

Order and the Modified CID.  *See* CFPB's Mot. at 1.  Although Nexus opposes the CFPB's

Motion, the nature of the relief that Nexus seeks from the Court is unclear.  Nexus does not

appear to dispute that the Modified CID required it to produce the records on the terms that the

CFPB seeks to enforce.  Nexus's Opp'n at 1–2 (admitting that the Order required compliance

with the Modified CID, that the Modified CID required production of at least 500 call

recordings, and that Nexus has only produced 96 call recordings).  Nexus's request for further

discussions regarding the scope of redactions suggests that it wishes to revisit the terms of the

Modified CID.  Alternatively, Nexus's invocation of unanticipated costs, burden, and an

intervening change in law suggests that it may seek equitable relief from the Court's December

11, 2018 Order.  Neither theory warrants relieving Nexus from its obligations under Paragraph

7(b) of the Modified CID and the Court's December 11, 2018 Order.

I. **Nexus Essentially Asks the Court to Reopen the Modified CID, But Has Identified No Legal Basis to Do So.**

By asking the Court to revise the terms of its production obligations in light of cost,

burden, and program participants' privacy interests, Nexus is seeking to revisit the terms of the

stipulation which were agreed to through mediation and adopted by Court order.  Yet Nexus cites

no law that would permit it to be relieved of its obligation to comply with the Modified CID.

As Nexus admits, the anticipated costs and burden of production was a factor that led to

the parties' mediation of the terms of CID.  *See* Nexus's Opp'n at 2–3 (noting that Nexus "cited

expense and burden as barriers to compliance" in discussions with the CFPB that predated the parties' negotiation of the Modified CID).  It is implausible that the parties would have failed to consider expense and burden during their negotiations.  Indeed, Nexus does not claim to have failed to consider those issues, but simply asserts that its predictive assessment of costs and burden has proven inaccurate.  *See* Nexus's Opp'n at 2–3.  Further, if the parties had not negotiated a resolution to their dispute regarding the original CID, the Court would have had to assess whether the CID was overly broad or unduly burdensome as part of its review of the original CFPB petition to enforce.  *See CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 688–89 (D.C. Cir. 2017) (defining nature and scope of district court review of petitions to enforce a CFPB CID).  Yet, instead of having the Court directly review those issues, Nexus chose to mediate its dispute and to be bound by the terms of the Modified CID.

Nexus's request to reopen discussions about the proper scope of redactions also retreads issues that were resolved through mediation and the Court-adopted stipulation.  The relevant portion of the Modified CID defines the parameters of the redactions that Nexus should make to records released in response to Paragraph 7(b).  Specifically, it states that the records will be produced "after redacting all consumer names and alien numbers."  *See* Modified CID at 4.  If the parties had intended to allow additional redactions, some qualifying language could have been used to indicate that the listed categories were not intended to limit the scope of redactions. Absent such language, Nexus's proposal to redact additional unspecified identifying information to protect the interests of program participants conflicts with the parties' agreed-to terms.  *See* Nexus's Opp'n at 4.

At bottom, Nexus seeks permission to deviate from the negotiated terms of the Modified CID.  But "a stipulation 'must be discerned within its four corners, and not by reference to what

might satisfy the purposes of one of the parties to it.'"  Mem. Op. Order at 3, ECF No. 39 (citing

*United States v. Armour & Co.,* 402 U.S. 673, 681–82 (1971)).  Courts may "summarily enforce

a completed settlement agreement—*i.e.,* one as to which there is no dispute as to 'the material

facts concerning the existence or terms of an agreement to settle.'"  *United States v. Greer,* 363 F.

Supp. 3d 23, 27 (D.D.C. 2019) (citing *United States v. Local 359, United Seafood Workers,* 55,

F.3d 64, 69 (2d. Cir. 1995)); *see also Simms v. Ball Street Ventures, LLC*, 616 F. Supp. 2d 5, 6

(D.D.C. 2009) ("Where 'a binding settlement bargain is conceded or shown' and 'there is no

factual dispute and no legal defense to enforcement,' the court may summarily enforce a

settlement agreement.") (citing *Autera v. Robinson,* 419 F.2d 1197, 1200 (D.C. Cir. 1969)).  As

there is no material factual dispute regarding the agreement's existence, its terms, or Nexus's

noncompliance, there is no basis to reopen negotiations or further revise the Modified CID.

## II.  Nexus Fails to Show That Equitable Relief From the Court's December 11, 2018 Is Warranted

Nexus's assertion that an intervening change in the law and the burdensomeness of the

Modified CID warrant excusing its noncompliance appears to be an appeal for equitable relief

from the December 11, 2018 Order.  Federal Rule of Civil Procedure 60 provides a means for a

party to seek relief from a judgment.[2]  Specifically Rule 60(b) provides "an exception to finality

that allows a party to seek relief from a final judgment, and request reopening of his case, under

a limited set of circumstances."  *U.S. Aid Funds, Inc. v. Espinosa,* 559 U.S. 260, 269–70 (2010)

(citing *Gonzalez v. Crosby*, 545 U.S. 524, 528–29 (2005)); *see also Hall v. C.I.A.*, 437 F.3d 94,

---

[2] The December 11, 2018 Order is a final judgment because it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Riley v. Kennedy,* 553 U.S. 406, 419 (2008) (citing *Catlin v. United States*, 324 U.S. 229, 233 (1945)).  The Order ended the litigation on the merits by granting the CFPB's petition to enforce and dismissing Nexus's claims against the CFPB with prejudice.  Order at ¶¶ 1, 3, ECF No. 29.

99 (D.C. Cir. 2006) ("[Rule 60] motions allow district courts to correct only limited types of substantive errors.").  However, relief pursuant to Rule 60(b) is contingent upon the filing of a motion.  *See* Fed. R. Civ. P. 60(b) (allowing court to grant relief from judgment "[o]n motion and just terms").  As Nexus has not filed a motion, it cannot avail itself of Rule 60(b).

Even if Nexus's opposition memorandum could be construed as a motion,[3] Nexus has not presented arguments that would warrant relieving it from its obligation to comply with the December 11, 2018 Order.  The subparts of Rule 60(b) that are most analogous to Nexus's arguments are 60(b)(1), (b)(2), and (b)(6).  Rule 60(b)(1) provides for relief based upon "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1).  Rule 60(b)(2) provides relief based upon "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."  Fed. R. Civ. P. 60(b)(2).  Rule 60(b)(6) is a catchall provision for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  None of those provisions supports granting equitable relief from the December 11, 2018 Order for the reasons explained below.

Nexus's underestimation of the cost and burden of compliance with the Modified CID does not warrant relief under Rule 60(b)(1).  "Mere dissatisfaction in hindsight with the choices deliberately made by counsel is not grounds for finding the mistake, inadvertence, surprise, or excusable neglect necessary to justify Rule 60(b)(1) relief." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986).  Further, when determining whether neglect is "excusable," courts must consider: (1) the danger of prejudice to the party opposing the modification; (2) the length of delay and its

---

[3] Courts have construed other types of motions as Rule 60(b) motions. *See, e.g.*, *Hall*, 437 F.3d at 99 (motion for reconsideration properly construed as motion for Rule 60(b) relief); *but see In re Jones*, 670 F.3d 265, 267 (D.C. Cir. 2012) (no abuse of discretion to refuse to apply Rule 60(b) to a "motion for leave to file notice of appeal").  However, Nexus has not filed any motion and has simply opposed the CFPB's motion.

potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1209 (D.C. Cir. 2003) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395 (1993)).  Here, the CFPB would be, and has been, prejudiced by Nexus's failure to abide by the parties' agreed upon modifications to the CID.  Nexus's noncompliance has delayed the CFPB's investigation, *see* CFPB's Reply at 2, and undoes the CFPB's year-long efforts in negotiating modifications.  Most importantly, Nexus offers no plausible excuse for why it agreed to the modifications without first determining its ability to comply.  Even if Nexus acted in good faith, fault falls solely on Nexus, and this factor alone is dispositive.  *See Riley*, 115 F. Supp. 3d at 97 (fault is "the most important single factor") (citing *Jarvis v. Parker,* 13 F. Supp. 3d 74, 78–79 (D.D.C. 2014)).

Nexus's realization that the costs and burden of its compliance exceed its projections also does not warrant relief under Rule 60(b)(2) as "newly discovered evidence" that could not have been timely discovered with due diligence.  Because Nexus did not discover the cost and burden of compliance until after the Order was issued, those costs may qualify as "newly discovered evidence."  *See Bain v. MJJ Productions, Inc.*, 751 F.3d 642, 647 (D.C. Cir. 2014) (evidence a party was aware of, but had not obtained, may be "newly discovered").  However, for relief under 60(b)(2) to be available, the party seeking such relief must have exercised "reasonable diligence," *id.*, and "must explicitly set out facts as to how the party sought out the missing evidence."  *Lans v. Gateway 2000, Inc.,* 110 F. Supp. 2d 1, 6 (D.D.C. 2000) (citing *United States v. Potamkin Cadillac Corp.,* 697 F.2d 491, 493 (2d Cir. 1983)).  Nexus asserts that it began compliance efforts immediately after the Court issued its December 11, 2018 Order and discovered the cost of compliance shortly after.  *See* Nexus's Opp'n at 3.  However, Nexus fails

to explain why the cost and burden of compliance could not have been discovered earlier.  A party exercising reasonable diligence would have made at least some effort to ascertain the burden imposed by the agreed upon terms of the Modified CID, before agreeing to be bound by those terms.  Given Nexus's apparent failure to fully investigate the cost of compliance, there is no basis to conclude that it exercised reasonable diligence.  *See Lans,* 110 F. Supp. 2d at 7 (denying Rule 60(b) relief where moving party "made a strategic choice to not investigate further into the existence of [evidence at issue]").

The fact that the costs of compliance may exceed Nexus's projections also would not warrant relief under the catchall provision of Rule 60(b)(6).  First, "mere financial hardship is insufficient justification for vacating a final judgment under Rule 60(b)[6]."  *Darby v. Shulkin,* 321 F.R.D. 10, 13 (D.D.C. 2017) (concluding plaintiff's alleged financial hardship was not an "extraordinary circumstance" that would warrant relief from judgment under Rule 60(b)(6)) (quoting *Randall v. Merrill Lynch*, 820 F.3d 1317, 1321 (D.C. Cir. 1987)).  More fundamentally, "Rule 60(b)(6) relief 'should be only sparingly used' and may not 'be employed simply to rescue a litigant from strategic choices that later turn out to be improvident.'"  *Salazar ex rel. Salazar v. District of Columbia,* 633 F.3d 1110, 1120 (citing *Kramer v. Gates,* 481 F.3d 788, 792 (D.C. Cir. 2007).  At its core, Nexus's opposition focuses on its own improvident decision to stipulate to the Modified CID.  Such buyer's remorse clearly falls outside the scope of the equitable relief available under Rule 60.  *See, e.g., Smith v. Widman Trucking & Excavating, Inc.,* 627 F.2d 792, 795 (7th Cir. 1980) ("[Rule 60(b)] is not intended to enable litigants to avoid the consequences of a decision to settle or compromise which in retrospect appears unfortunate."); *Cobell v. Babbitt,* 37 F. Supp. 2d 6, 10 (D.D.C. 1999) ("[C]ourts have been particularly unsympathetic to purported excuses for less-than substantial compliance where the contemnor has participated in

drafting the order against which compliance is measured.") (citing *United States v. Tennessee,* 925 F. Supp. 1292, 1302 (W.D. Tenn. 1995).

Finally, the Supreme Court's 2019 ruling in *Nielsen v. Preap*, 139 S. Ct. 954 (2019), does not provide grounds to relieve Nexus from its obligation to comply with the December 11, 2018 Order.  That case addressed the scope of the mandatory detention policies of the Immigration and Nationality Act and their applicability to certain categories of individuals whose crimes or links to terrorism make them inadmissible and deportable.  *See id.*  Nexus apparently believes that the Court's conclusion in *Preap*, that ICE may detain certain undocumented immigrants based on past crimes even if the immigrant is no longer in custody for that crime, increases the risks and consequences that its program participants may face if their unredacted telephone calls are released to the CFPB.  *See* Nexus's Opp'n at 4–5; Nexus's Opp'n Ex. A, at 2, ECF No. 36-1. When the parties were negotiating the Modified CID, the Supreme Court had already granted certiorari to review the Ninth Circuit's underlying opinion, *Nielsen v. Preap*, 138 S. Ct. 1279 (2018), and there was a circuit split with several courts reaching conclusions that differed from the Ninth Circuit; thus, Nexus should have been aware that the outcome of the case might affect its clients' privacy concerns and could have taken that into account when negotiating the scope of redactions.

Regardless, the connection between *Preap* and Nexus's obligation to disclose records under the Modified CID is too tangential to warrant relief from the judgment.  At most, *Preap* indicates that undocumented immigrants who have committed certain crimes risk detention if ICE locates them.  That neither invalidates nor delegitimizes the terms of the Modified CID, which already provide for the redaction of alien numbers and names.  The possibility that additional identifying information may be retrieved from the calls, passed on to ICE, and

increase participants' risk of apprehension and detention is too speculative to provide grounds for relief from the December 11, 2018 Order.

## CONCLUSION

For the foregoing reasons, the CFPB's Motion to Enforce the Court's December 11 Order and the Terms of the Bureau's Modified CID, ECF No. 34, shall be **GRANTED**.  Nexus had every opportunity to investigate and raise its financial and legal concerns prior to entering a joint stipulation, and must abide by the terms of the bargain it struck.

## REVIEW BY THE DISTRICT COURT

The parties are hereby advised that under the provisions of Local Rule 72.2(b) of the United States District Court for the District of Columbia, any party who objects to the undersigned magistrate judge's ruling must file a written objection thereto within 14 days of the party's receipt of this Memorandum Opinion and Order.  The written objections must specifically designate the order or part thereof to which objection is made, and the basis for the objection.

Date: _____February 21, 2020_____          Signed: _____